UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| BEVERLY J. COLE, | ) | CIV. 11-5034-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Beverly J. Cole filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 10). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 23). The parties filed their JSMF. (Docket 28). The defendant filed a statement of disputed facts. (Docket 27). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 29) is granted and the defendant's motion to affirm the ALJ's decision (Docket 30) is denied.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 28) is incorporated by reference. The government filed a separate statement of disputed facts. (Docket 27). Further recitation of salient facts is included in the discussion section of this order.

On April 5, 2007, plaintiff Beverly Cole applied for disability insurance benefits and supplemental social security income asserting a disability date of March 18, 2007.  (Docket 28 at ¶ 3).  The claims were denied initially on August 13, 2007, and on reconsideration on February 27, 2008.  Id. ¶¶ 4 & 6.  Ms. Cole filed a request for a hearing on April 18, 2008, and a hearing was held on June 2, 2009.  Id. at ¶¶ 7-8.  Id.  On September 25, 2009, the ALJ issued a decision finding Ms. Cole was not disabled and denying benefits.  Id. at ¶ 9; see also Administrative Record, pp. 14-28.[1]  Ms. Cole subsequently sought review from the Appeals Council.  (Docket 28 at ¶ 10).  The Appeals Council denied Ms. Cole's review request.  Id. at ¶ 11.  Ms. Cole then filed a complaint requesting judicial review.  (Docket 1).  The Commissioner moved for remand pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings because a complete transcript was unable to be prepared.  (Dockets 14 & 15).  The court granted the motion to remand.  (Docket 16).

On May 3, 2012, a second administrative hearing was held.  (Docket 28 at ¶ 16).  On July 12, 2012, the ALJ issued a decision finding Ms. Cole was not disabled and denying benefits.  Id. at ¶ 17; see also AR at pp. 698-722.  The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.  It is from this decision which Ms. Cole timely appeals.

---

[1]The court will cite to information in the administrative record as "AR at p. ___."

2

This issue before the court is whether the ALJ's decision of July 12, 2012, (the "2012 ALJ decision") that Ms. Cole was not "under a disability within the meaning of the Social Security Act from March 18, 2007, through [July 12, 2012]" is supported by substantial evidence on the record as a whole.  (AR, p. 702); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account

whatever in the record fairly detracts from that decision." <u>Reed v. Barnhart</u>, 399 F.3d 917, 920 (8th Cir. 2005) (quoting <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " <u>Reed</u>, 399 F.3d at 920 (quoting <u>Shannon v. Chater</u>, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR

§ 404.1520(a)(4).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment–one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  (AR at pp. 703-12).  At step five of the evaluation, the ALJ found there were jobs that existed in significant numbers in the national economy that Ms. Cole could perform and she was, therefore, not disabled.  Id. at pp. 711-12.

## A.    PLAINTIFF'S ISSUES ON APPEAL

Ms. Cole contends the ALJ erred by (1) failing to identify all of Ms. Cole's severe impairments at step two of the evaluation process; (2) failing to consider whether Ms. Cole's impairments met or equaled the criterion for Listing 12.02 regarding organic mental disorders; (3) incorrectly weighing expert findings and opinions; (4) failing to apply the proper legal standards in making a finding that Ms. Cole was not credible; (5) failing to adequately consider lay witness

5

evidence; (6) failing in the application of legal standards in determining Ms. Cole's residual functional capacity; and (7) determining Ms. Cole could work as a cafeteria attendant.  The court will discuss each argument in turn.

### 1.  Whether the ALJ failed to identify all of Ms. Cole's severe impairments.

Ms. Cole argues the ALJ failed to identify the following severe impairments at step two of the sequential analysis: (1) cognitive dysfunction related to hydrocephalus; (2) brain abnormalities; and (3) organic mental disorder as defined by SSA.  (Docket 29 at p. 24).  Defendant asserts the ALJ did not err at step two of the analysis because he "explicitly incorporated limitations in her residual functional capacity assessment that addressed any cognitive deficiencies [Ms.] Cole might have."  (Docket 31 at p. 9).  Although Ms. Cole concedes the ALJ's step-two analysis may not be reversible error, she contends the failure to consider the alleged severe impairments "set the stage for reversible error at Step Three, and the assessments of credibility and RFC." (Docket 32 at p. 7).

Assuming without deciding the ALJ's omission constituted legal error at step 2 of the evaluation process, "it could only have prejudiced [Ms. Cole] in step three (listing impairment determination) or step five (RFC) because the other steps, including [step two] were resolved in her favor."  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).  Ms. Cole's objection on this basis is overruled.

6

**2. Whether the ALJ erred in not considering whether Ms. Cole met the criterion for Listing 12.02 regarding organic mental disorders.**

Ms. Cole contends the ALJ erred by failing to consider whether she met the criterion for Listing 12.02 regarding organic mental disorders. (Docket 29 at pp. 24-27). The Commissioner acknowledges the ALJ did not consider Listing 12.02 specifically, but notes the ALJ did consider Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders), both of which require a claimant to satisfy the identical "paragraph B" criteria required in Listing 12.02. (Docket 31 at p. 11, n. 6).

Listing 12.02 states:

> 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity is met when the requirements of both A and B are satisfied . . . .
> . . .
> B.  Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.02.

7

Defendant argues the ALJ's finding related to "paragraph B" criteria for Listings 12.04 and 12.06 is "dispositive of [Ms.] Cole's claim that she met the Listing 12.02 because the criteria and analysis are the same." (Docket 31 at p. 11, n. 6).

Ms. Cole does not object to the ALJ's finding she had moderate limitations in activities of daily living, only mild limitations in social function, and only one to two episodes of decompensation. Rather, Ms. Cole argues she satisfies the "paragraph B" criteria because she was unable to perform work in any kind of reliable, consistent manner, had a hard time following through on directions, was obsessive, did not finish what she started, had a difficult time concentrating, and was often irritated and overwhelmed by change." (Docket 32 at pp. 8-9).

Even accepting Ms. Cole's argument, she fails to satisfy the "paragraph B" criteria for Listing 12.02 because the facts only indicate she meets one of the criteria. Under a plain reading of Listing 12.02, Ms. Cole must satisfy "at least two" of the four numbered criteria. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1202(B). Although Ms. Cole argues she has difficulty in maintaining concentration, persistence, and pace, this only satisfies one of the numbered criteria. Ms. Cole does not contend she meets any of the other requirements. As a result, the ALJ did not err in failing to consider whether Ms. Cole met the criteria for Listing 12.02.

8

### 3.  Whether the ALJ properly weighed the medical source opinions.

Ms. Cole asserts the ALJ erred by relying "entirely on non-examining consultants and either not addressing or discounting the opinions of treating specialists and examining professionals." (Docket 29 at p. 33).  The defendant asserts the ALJ properly considered the opinions of the treating and examining physicians and appropriately discounted them to the extent they were inconsistent with the record.  (Docket 31 at pp. 20-30).

The United States Court of Appeals for the Eighth Circuit held, "[a] treating physician's medical opinion is given controlling weight if that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " Choate, 457 F.3d at 869 (quoting 20 CFR § 404.1527(d)(2)).  "A treating physician's opinions must be considered along with the evidence as a whole, and when a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (citations omitted).  The purpose of placing greater weight on a treating source is because they are "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 CFR § 404.1527(c)(2).  The ALJ must " 'give good reasons' for discounting a treating physician's opinion." Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).

The ALJ gave "substantial weight/great weight" to the testimony of Dr. Woodrow Janese, a non-examining neurologist and neurosurgeon who testified at Ms. Cole's 2012 hearing.  (AR at p. 707).  The ALJ adopted Dr. Janese's testimony that Ms. Cole had recovered fully and had no brain abnormality.  Id. The ALJ also adopted the finding that Ms. Cole's hydrocephalus was controlled by a "well-functioning shunt originally placed 30 years ago."  Id.  Dr. Janese testified individuals suffering from hydrocephalus who gets shunts get better. (Docket 28 at ¶ 196).  Dr. Janese also testified Ms. Cole had no severe neurological or spinal issues or impairment.  (AR at p. 707).

The ALJ also gave "substantial weight" to the opinions of Dr. Jerome Buchkoski and Dr. Doug Soule, state agency psychiatric consultants, who opined Ms. Cole's limitations were no more than moderate and her mental residual functional capacity was consistent with her ability to work.  Id. at pp. 707-08.  Dr. Buchkoski concluded that while Ms. Cole "may get distracted at times, her condition would likely improve with treatment."  Id. at 708.

The ALJ found although "several treating sources have opined that [Ms. Cole] cannot sustain work, these sources also occasionally noted that she may be unrealistic in her expectations of the *kind* of work that she can do."  Id. (emphasis in original).  The ALJ noted Ms. Cole's "history of schooling towards a career in nursing, volunteer work as an EMT and continual recertification in that field, and paid work (even though not a[t] substantial gainful activity

10

levels), are not at all consistent with finding that she was unable to work." Id.
The ALJ noted Ms. Cole's daily activities were inconsistent with finding her
disabled.

Ms. Cole argues the ALJ erred by discounting the opinions of Dr.
Lassegard and Dr. Finley, both treating physicians. (Docket 29 at pp. 29-32).
On several occasions, Dr. Lassegard noted the odd or bizarre behavior of Ms.
Cole. (Docket 28 at ¶¶ 113, 127, 130, 172). At a July 2008 appointment, Dr.
Lassegard told Ms. Cole he thought she was "delusional because of her brain
injury problems and hydrocephalus and abscess." Id. at ¶ 127. Dr. Finley
noted Ms. Cole would have difficulty responding appropriately to work
situations on a sustained basis, would have difficulty dealing with changes in a
work environment, and trouble recalling things. Id. at ¶ 185. Dr. Finley opined
Ms. Cole was able to understand instructions but had difficulty following
through with activities on a regular basis. Id. As evidence of this, Dr. Finley
pointed to Ms. Cole's inability to hold down employment and frequent moves
back and forth between various activities. Id.

The ALJ found Dr. Lassegard's and Dr. Finley's opinions regarding Ms.
Cole's ability to work were inconsistent with her activities. (AR at pp. 708-09).
The ALJ found Ms. Cole held herself out as capable of handling emergency
situations, had volunteered as an EMT and had performed CNA work. Id. at p.
708. The ALJ also found Ms. Cole's history of schooling toward a nursing

career, recertifying as an EMT, and "looking very hard for work" did not support finding her disabled.  Id.

The court finds the ALJ's conclusion regarding Ms. Cole's work history and desire to work do not conflict with Dr. Finley's and Dr. Lassegard's opinions about Ms. Cole's ability to work.  Dr. Finley stated Ms. Cole had difficulty following through with work on a consistent basis.  (Docket 28 at ¶ 185).  This is supported by the myriad of jobs Ms. Cole held for short periods of time.  See Docket 28 at ¶ 327.  Ms. Cole's work history demonstrates the difficulty she has in accomplishing simple tasks and in working with others.  For example, since 1998, Ms. Cole was employed but terminated from Banner Health, Wal-Mart, Nursefinders, Regional Senior Care, Victorian LLC, Kurylas Inc., Hart Ranch Camping, Kids Kastle, JRK Svc Interim Health Care, Impressions Cleaning, RC School District, Rapid City Auditor, In Gathering Inc., Meadowbrook Grill & Pub, Nifty-Fifties Restaurant, RCC Western Stores, Black Hills Coffee Company, care taker for Betty Ellis, American Legion, Bureau of Census, and Readytech-Go LLC.  Id.  Each termination was the result of an inability to get simple work tasks completed, inability to work with others, conflicts between Ms. Cole and customers or other workers or supervisors, an inability to remember simple tasks, or for reasons related to Ms. Cole's health problems.  Id.

Although Ms. Cole may have held herself out as capable of working, her employment record is consistent with Dr. Finley's opinion that she has difficulty

12

responding appropriately to work situations on a sustained basis.  This also is consistent with Certified Rehabilitation Counselor Linda Lockner's assessment of Ms. Cole.  Ms. Lockner stated Ms. Cole's "initial unwillingness to consistently follow precise instructions may suggest [she] may experience problems in a work setting that involves cooperation efforts with supervisors and coworkers." Id. at ¶ 322.

While both Dr. Lassegard and Dr. Finley opined Ms. Cole could not sustain work, they also suggested Ms. Cole "may be unrealistic in her expectations of the *kind* of work she can do."  Id. at ¶ 39.  Despite Ms. Cole's "unrealistic expectations," her work history shows she was unable to complete menial tasks with various employers.

The court finds the record does not support Dr. Janese's opinions.  The ALJ adopted Dr. Janese's opinion that Ms. Cole had fully recovered from any brain condition related to her hydrocephalus and had no brain abnormality. (AR at p. 707).  Dr. Janese's opinion was based in part on his incorrect belief Ms. Cole had a well-functioning shunt placed 30 years ago.  Id.  Although Dr. Janese was corrected by Ms. Cole's counsel regarding the timeline of Ms. Cole's shunt placement, which actually occurred 1998 not 1982, the ALJ adopted Dr. Janese's opinion apparently believing the shunt surgery had been performed 15 years earlier than it actually had been.  Id.  The defendant argues this is not material because "it did not change [Dr. Janese's] opinion nor the ALJ's

determination that [Ms.] Cole was not disabled." (Docket 31 at p. 26). The court does not agree. First, plaintiff's counsel not only had to correct Dr. Janese regarding the timeline for Ms. Cole's shunt placement, but had to direct Dr. Janese to the portion of the record which set forth the timeline. (AR at 780-81). This suggests Dr. Janese was not as familiar with the records as the defendant suggests. Second, the ALJ adopted Dr. Janese's incorrect statement regarding Ms. Cole's shunt surgery despite being aware it was incorrect.

Dr. Janese's opinion that hydrocephalus is corrected by shunt surgery is inconsistent with the record. Ms. Cole's shunt was placed in 1998. Ten years later, Dr. Lassegard believed Ms. Cole was "delusional because of her brain injury problems and hydrocephalus and abscess." (Docket 28 at ¶ 127). This finding suggests Ms. Cole was continuing to suffer from the effects of hydrocephalus and suggests her shunt surgery did not fully correct the hydrocephalus.

In March 2007, Ms. Cole underwent a left inferior temporal craniotomy, exoneration of abscess, and volumetric resection. Id. at ¶ 100. In April 2007, Dr. Lassegard assessed "delusional thoughts." Id. at ¶ 104. Delusional thoughts were again reported in July 2007 and July 2008. Id. at ¶¶ 163, 127. Manic or grandiose symptoms were reported in July 2007, November 2008 and March 2009. Id. at ¶¶ 136, 140, 160, 163-64. Dr. Janese concluded these delusional thoughts were symptoms from general anesthesia and opiates related

14

to the surgery performed in 2007.  Id. at ¶ 193.  This conclusion conflicts with Dr. Lassegard's treatment notes indicating delusional thoughts two years after Ms. Cole's abscess surgery.  The ALJ did not give good reasons for discounting these opinions.

In August of 2011, Dr. Finley noted Ms. Cole's CT performed in 2008 showed slit-like ventricles and noted associated symptoms.  Id. at ¶ 148.  In January of 2012, Dr. Finley noted Ms. Cole's CT scan identified "very small or slit-like ventricles" and Dr. Finley remarked Ms. Cole had some clinical symptoms supportive of slit ventricle syndrome.  Id. at ¶ 151.  Dr. Janese testified the slit-like ventricles meant the "shunt is working."  Id. at ¶ 190.  Dr. Janese's conclusion that the slit-like ventricles meant Ms. Cole's shunt was working is contradicted by later findings by Dr. Finley indicating Ms. Cole exhibited symptoms of slit ventricle syndrome.  The ALJ did not give good reasons for discounting Dr. Finley's findings.

The courts finds the ALJ did not give good reasons for discounting the opinions of Dr. Lassegard and Dr. Finley, particularly related to evidence which was inconsistent with the conclusions of Dr. Janese, a non-examining physician.

The court finds the ALJ's reliance on Dr. Buchkoski's and Dr. Soule's testimony is not supported by substantial evidence because Dr. Buchkoski and Dr. Soule did not review the entire record.  Dr. Buchkoski only reviewed pre-

15

August 2007 medical and testing evidence.  (Docket 32 at ¶ 165).  Dr. Soule

reviewed pre-February 2008 evidence.  Id. at ¶ 168.  Ms. Cole continued

receiving treatment through 2012.  Neither Dr. Buchkoski's nor Dr. Soule's

evaluations of Ms. Cole considered evidence beyond 2008.  Despite the ALJ's

reliance on state agency psychiatric consultants who had not reviewed the

entire record, the defendant argues Dr. Janese reviewed the entire record and

testified Ms. Cole had "fewer limitations than those of the state agency

psychologists." (Docket 31 at p. 29).  Despite this argument, the court "must

review the ALJ's discussion of the opinion evidence rather than relying solely on

the post hoc rationale offered by the Commissioner." Neeson v. Colvin, No.

2:12-cv-51 SNLJ (SPM), 2013 WL 5442911, *12 (E.D. Mo. 2013) (citing Evans v.

Astrue, No. 4:08CV3266, 2010 WL 1664973, *10 (D. Neb. 2010)).  In this case,

the ALJ's discussion appears to be limited to Dr. Buchkoski's and Dr. Soule's

examinations.  Additionally, the ALJ's decision does not provide good reasons

for discounting the opinions of Ms. Cole's treating physicians and giving

substantial weight to the state agency consultants.

Finally, Ms. Cole argues the ALJ did not properly consider the opinions of

Dr. Greg Swenson who performed a psychological consultation with Ms. Cole.

(Docket 29 at p. 30).  The ALJ did acknowledge the psychological consultation

performed by Dr. Swenson, remarking Dr. Swenson diagnosed Ms. Cole with

type I bipolar disorder and an amnestic disorder possibly due to a brain lesion.

(AR at p. 709).  Dr. Swenson noted he was able to redirect Ms. Cole's rambling, tangential answers and direct her focus.  Id.  Dr. Swenson remarked Ms. Cole had difficulty sustaining her attention "for any length of time at all," but was able to concentrate long enough to provide solutions to problems given to her during the testing process.  Id.

Although defendant acknowledges the ALJ did not weigh Dr. Swenson's opinions, defendant asserts the ALJ incorporated his opinions, specifically the hand tremor, into the residual function capacity by only permitting Ms. Cole to finger occasionally.  (Docket 31 at pp. 24-25, 29-30).  Ms. Cole argues "occasional fingering" does not accurately state her functional limitations because she was given a low score in finger dexterity.  (Docket 32 at p. 16).  Ms. Cole also argues the ALJ's conclusion conflicts with vocational expert Linda Lockner's opinion.  (Docket 29 at p. 30).  The ALJ did not address Ms. Lockner's opinions.  Defendant acknowledges the ALJ did not discuss Ms. Lockner's assessment, but contends the restrictions imposed by the ALJ were more restrictive.  (Docket 31 at pp. 29-30).  This is inconsistent and conflicts with Ms. Lockner's conclusion that Ms. Cole's test results, including severe limitations in finger dexterity, manual dexterity, and motor coordination, as identified by the SAGE vocational test, eliminated any possible job.  The ALJ failed to consider this contradictory evidence.

17

The courts finds the ALJ's decision is not supported by substantial evidence in the record as a whole. Specifically, the ALJ failed to give good reasons for discounting the opinions of Ms. Cole's treating physicians. The ALJ failed to resolve the inconsistencies in the record between the conclusions of Ms. Cole's treating physicians and the state agency non-examining physician, Dr. Janese. The ALJ also failed in relying on state agency psychiatric consultants whose opinions were not based on a review of the entire record.

### 4. Whether the ALJ's determination of Ms. Cole's credibility was proper.

Ms. Cole asserts the ALJ's credibility finding is not supported by substantial evidence. (Docket 29 at pp. 34-37). The ALJ found Ms. Cole's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Ms. Cole's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with . . . residual functional capacity assessment." (AR at p. 707).

When analyzing a claimant's subjective complaints, the ALJ must examine:

1.  the claimant's daily activities;

2.  the duration, frequency and intensity of the pain;

3.  precipitating and aggravating factors;

4.  the dosage, effectiveness and side effects of medication; and

5.  functional restrictions.

18

<u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ may properly discount the claimant's testimony where it is inconsistent with the record. <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 590 (8th Cir. 2004).  "[T]he ALJ cannot simply invoke <u>Polaski</u> or discredit the claims because they are not fully supported by medical evidence. . . . Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible."  <u>Dukes v. Barnhart</u>, 436 F.3d 923, 928 (8th Cir. 2006) (internal citations omitted).  "The ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered."  <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004).

The ALJ did note Ms. Cole's claimed ability to work was limited by hydrocephalus, and abscess in the left quadrant, and internal blood infection, fatigue, a skull incision, leg pain, and her lower back.  (AR at p. 706).  The ALJ also noted Ms. Cole's reported trouble with her legs and ankles, headaches, dizziness, twitching, shortness of breath, elevated heart rate, and exhaustion. (AR at p. 706-07).  The ALJ acknowledged that since March 2007 Ms. Cole had only gone dancing two or three times, only spent seven to eight days with people in the music business, had not written any music, had volunteered as an EMT only seven times in five years, and had only exercised at the gym three times. <u>Id.</u> at p. 707.

Despite these alleged limitations, the ALJ found Ms. Cole's activities were inconsistent with disability.  Specifically, the ALJ noted Ms. Cole was able to come back to topic when directed after she strays, she had an active social life, she had a history of schooling toward a nursing career, she volunteered as an EMT and continued to recertify in that field, and held herself out as being able to work.  Id. at p. 708.

The ALJ determined Ms. Cole could perform light work with the following limitations:

> [T]he claimant can lift and carry 10 pounds frequently and 20 pounds occasionally; sit for a total of 6 hours out of an 8-hour workday; and stand and/or walk for a combined total of up to 6 hours out of an 8-hour workday.  She can frequently balance, but can no more than occasionally stoop, crouch, kneel, crawl, or climb ramps and stairs, and never climb ladders, ropes, or scaffolds.  The claimant can use both upper extremities to frequently handle and operate hand controls, but can only occasionally finger.  She cannot work safely at unprotected heights or in close proximity to machinery with exposed moving parts.  Mentally, the claimant remains able to understand and remember no more than simple, 3- to 4-step instructions. However, within that context, she remains able to sustain attention in 2-hour blocks throughout an 8-hour workday, though she requires reminders and/or redirection one to two times a day to ensure timely and accurate completion of tasks.  The claimant is able to exercise sufficient judgment to make basic work-related decisions and can adhere to a normal schedule, as well as adjust to changes in a routine work environment.  However, she cannot sustain multi-tasking and can tolerate no more than occasional interaction with the general public.  The claimant is nevertheless able to interact with supervisors and coworkers.

Id. at p. 705-06.

20

The ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the credible testimony and reports of the claimant, her family, and her friends, the opinions entitled to the greatest weight as noted above, and the objective medical evidence in the record.

Id. at p. 710

The ALJ found Ms. Cole's ability to recertify as an EMT and take courses in nursing did not support her claims of disability.  This conclusion is inconsistent with the record.  Dennis McMillin, a full-time emergency medical technician, testified recertification as an EMT only required an accumulation of 24 hours of continuing education.  (Docket 28 at ¶ 218).  No written or performance tests were required for Ms. Cole to recertify.  Id.  Since 2007, Ms. Cole's only EMT work consisted of attending six power-lifting meets.  Id. at ¶ 306(p).  Perhaps more telling of Ms. Cole's actual limitations is the fact Mr. McMillin asked Ms. Cole to resign her position as a volunteer with the Hayward, South Dakota, fire department because of her limitations and inability to perform to required standards.  Id.  In addition, the ALJ noted Ms. Cole was taking courses in nursing.  However, the record reflects Ms. Cole never actually completed a single nursing class.  Id. at ¶ 306(s).

Although Ms. Cole held herself out as being employable, the record is clear that nearly every job she attempted ended in termination.  See id. at ¶ 327.  The record reflects Ms. Cole has a difficult time focusing and

21

maintaining concentration.  Co-workers and supervisors consistently observed Ms. Cole's inability to accomplish simple tasks in a timely manner, the need for constant reminders regarding simple tasks, her inability to follow instructions and adapt to change, and her disheveled appearance.

Ms. Cole's treating physicians confirm these limitations, finding she was easily confused, distracted, and often interjected bizarre and irrelevant comments into conversations.  Dr. Lassegard noted and told Ms. Cole he believed she was delusional as a result of her hydrocephalus and other brain abnormalities.  Dr. Swenson, a consulting psychologist, noted Ms. Cole had difficulty sustaining her attention on topic "for any length of time at all."  (AR at p. 709).  Although recognizing this limitation, the ALJ nevertheless concluded Ms. Cole could sustain attention for 2-hour blocks throughout an 8-hour workday.  Id. at 706.

"The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard."  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski).  "Where adequately explained and supported, credibility findings are for the ALJ to make."  Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  The court fails to see any inconsistency between Ms. Cole's level of activity and her inability to focus and concentrate on a consistent basis, as well as adapt to change and follow instructions.

The ALJ has not provided sufficient reason to discredit Ms. Cole's subjective complaints.  The ALJ failed to "make an express credibility determination detailing his reasons for discrediting the testimony."  Ricketts v. Sec'y of Health and Human Serv's, 902 F.2d 661, 664 (8th Cir. 1990).  As a result, the court finds the ALJ's credibility determination is not supported by substantial evidence.

### 5.   Whether the ALJ properly discounted third-party statements.

Ms. Cole argues the ALJ failed to properly consider lay witness evidence from Ms. Cole's family members, co-workers and supervisors.  (Docket 29 at pp. 33-34).  On a review on the entire record, the court finds the ALJ erred in failing to accord proper weight to uncontradicted lay evidence from Ms. Cole's co-workers, supervisors, friends and brothers.  Although the ALJ noted the observations of these lay witnesses, which were consistent with Ms. Cole's treating physicians' findings, the ALJ chose instead to focus primarily on tasks Ms. Cole claimed she could perform.

Daniel Cole, Ms. Cole's brother, testified he only saw Ms. Cole in person once a year but spoke with her on the phone monthly.  (Docket 28 at ¶ 201).  In 2007, Daniel reported Ms. Cole suffered from memory and concentration issues and had a difficult time understanding instructions.  Id.  Daniel also noted Ms. Cole would ramble from subject to subject, would lose focus, and forget what she already told him.  Id.

Patrick Torres, a friend of Ms. Cole's, reported in 2007 Ms. Cole struggled with personal care, often wearing dirty clothes.  He often saw dirty clothes soaking in her tub and a kitchen sink and counter full of dirty dishes.  Id. at ¶ 202).  Patrick also noted Ms. Cole struggled with completing tasks, concentrating, understanding, and getting along with others.  Id.  He said Ms. Cole often rambled off during conversations and confused past conversations. Id.

Sheila Kath, office administrator for Visiting Angels, noted Ms. Cole dressed appropriately and was reliable during her short-term employment with Visiting Angels, which lasted from March 5-17, 2007.  Id. at ¶ 203.

John Cole, Ms. Cole brother, reported in 2007 he spent very little time with Ms. Cole but noted Ms. Cole could not think clearly, reason, or act logically.  Id. at ¶ 204.  He reported Ms. Cole did not use good judgment, did not do a good or adequate job of cleaning, and lacked attention to detail.  Id.  He also observed that Ms. Cole struggled with following written and spoken instructions.  Id.

Lisa Batten, a co-worker at the Ellsworth Air Force Base BH Services site, related in 2007 Ms. Cole often looked tired and had frequent headaches. Id. at ¶ 206.  Lisa indicated Ms. Cole's attendance at her job was a major concern.  Id.  She reported Ms. Cole often had a dirty and wrinkled uniform, her hair was often messy, her make-up appeared uneven, and Ms. Cole often

24

needed reminders to fix her hair, straighten her uniform, wash her uniform and wear a clean one daily.  Id.  Lisa noted Ms. Cole took four times longer to complete tasks and needed co-workers to help her finish assignments in the allotted time.  Id.  Lisa remarked Ms. Cole was easily confused and frustrated, and Ms. Cole's ability to retain information and remain focused was greatly diminished.  Id.

Karl Dixon, Contract Manager at BH Services, noted in 2009 Ms. Cole was unable to complete her duties unsupervised, needed extra help or supervision, and had to be given easier or fewer duties with lower production and quality standards.  Id. at ¶ 207.

In July 2011, Daniel Cole provided an additional statement which outlined Ms. Cole's attempts to work following her shunt surgery.  Id. at ¶ 215. He noted Ms. Cole was very motivated and willing to work, but it was not clear to him what she was actually accomplishing versus what she was actually able to achieve.  Id.  He also remarked that although Ms. Cole's handwriting had improved following her shunt placement, it returned to being very erratic/jerky and was very difficult to read.  Id.  He observed that Ms. Cole was mentally disorganized, overestimated her abilities and accomplishments, injected irrelevancies into conversations and was confused.  Id.

In May 2012, Kevin Conner, an employer, reported that Ms. Cole was unable to perform her job as a caretaker in any kind of reliable, consistent

manner.  Id. at ¶ 217.  He indicated it was very difficult to get Ms. Cole to follow through on directions.  He noted she would often argue and make weird comments.  Id.

In May 2012, Dennis McMillin, an EMT and acquaintance of Ms. Cole, noted Ms. Cole's motor skills were very poor.  Id. at ¶ 218.  He indicated he asked Ms. Cole to resign as a volunteer fire fighter because of her limitations and inability to perform to required standards.  Id.  Mr. McMillin also reported that although Ms. Cole was a certified EMT in South Dakota, the only requirement to obtain that status was 24 hours of continuing education and that no tests, written or performance, were required.  Id.

These lay witnesses indicated Ms. Cole lived by herself, was able to cook for herself, and do modest household chores, including vacuuming, sweeping, mopping, and laundry.  Id. at ¶¶ 201 & 204.  These lay witnesses also reported Ms. Cole enjoyed dancing, singing, and going out on occasion.  Id. at ¶¶ 202, 204, 206 & 215.

The testimony of these lay witnesses is remarkably similar.  Each noted Ms. Cole's issues with memory, concentration, ability to follow instructions, and focus.  The majority of these witnesses observed Ms. Cole's disheveled appearance at work.  The testimony of these witnesses is consistent with the observations and findings of Ms. Cole's treating physicians.  The ALJ's conclusion Daniel Cole's assessment was entitled to lesser weight because he

was "understandably motivated to support [Ms. Cole's] claim" is not supported by substantial evidence.  (AR at p. 710).  The lay witnesses from Ms. Cole's family, personal life, and work life all testified regarding Ms. Cole's limitations. Daniel Cole's observations of Ms. Cole were not out of line with the other witnesses.  The ALJ did not provide good reasons for discounting the testimony of lay witnesses.

### 6. Whether the ALJ's residual functional capacity assessment is supported by substantial evidence in the record as a whole.

Ms. Cole asserts the ALJ failed to examine all the evidence prior to making a determination of her residual functional capacity.  "It [is] the ALJ's responsibility to determine [a claimant's] RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the claimant's] own description of her limitations."  Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995) (citing 20 CFR §§ 404.1545-46, 416.945-46).

"The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competive work."  Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000).  The court already ruled the ALJ erred in relying on Dr. Janese's, Dr. Buchkoski's and Dr. Soule's opinions and failed to provide good reasons for discounting the opinions of Ms. Cole's treating physicians.  As a result, the court finds the ALJ's decision was not based on substantial evidence.

### 7. Whether the ALJ's conclusion Ms. Cole could work as a cafeteria attendant is supported by substantial evidence in the record as a whole.

Ms. Cole asserts the ALJ's hypothetical question did not "capture the concrete consequences of [her] limitations." (Docket 29 at p. 41). "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." Newton v. Chater, 92 F.3d 688, 694-95 (8th Cir. 1996). "Testimony from . . . a [vocational expert] on a properly-phrased hypothetical question constitutes substantial evidence." Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). "An expert's testimony based upon an insufficient hypothetical question may not constitute substantial evidence to support a finding of no disability." Newton, 92 F.3d at 695. "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." Lacroix v. Barhnart, 465 F.3d 881, 889 (8th Cir. 2004).

As noted above, the court found it improper for the ALJ to rely on the opinions of Dr. Janese, Dr. Buchkoski and Dr. Soule. Neither Dr. Buchkoski nor Dr. Soule reviewed the entire record in this case. Dr. Janese's opinions directly conflicted with the opinions of Dr. Lassegard and Dr. Finley and the ALJ did not provide "good reasons" for discounting those opinions. As a result, the court finds the hypothetical question posed by the ALJ was improper. Because

28

the question was improper, the ALJ's determination Ms. Cole could perform jobs existing in significant numbers in the national economy is likewise improper.

### ORDER

Based on the foregoing discussion, the court finds the ALJ erred in relying on the opinions of Dr. Janese, Dr. Buchkoski and Dr. Soule, and failed to provide "good reasons" for discounting the opinions of Ms. Cole's treating physicians.  As a result, the court finds the matter should be remanded for further proceedings consistent with this opinion.  Accordingly, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 29) is granted.

IT IS FURTHER ORDERED that defendant's motion to affirm the ALJ's decision (Docket 30) is denied.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with the decision set out above.

Dated March 21, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE