UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BEVERLY J. COLE,<br><br>     Plaintiff,<br><br> vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>     Defendant. | CIV. 11-5034-JLV<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR EAJA FEES |

**NATURE AND PROCEDURE OF THE CASE**

On March 21, 2014, the court entered an order (1) reversing the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Beverly Cole's application for benefits, (2) denying the defendant's motion to affirm the decision of the Administrative Law Judge ("ALJ"), and (3) remanding the case for further administrative proceedings. (Docket 33). Pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, Catherine Ratliff, counsel for Ms. Cole, timely moved for an award of attorney's fees and expenses. (Docket 35). Ms. Cole seeks an award of $27,228.83 in attorney's fees. She also requests expenses representing a 6-percent state and local sales tax of $1,633.73 and $528.01 in litigation costs "for the cost of [a] treating specialist opinion, vocational aptitude/ability testing, medical records, [and] on-line expert opinion." Id. at 1. The Commissioner opposes Ms. Cole's motion. (Docket 38). For the reasons stated below, the court grants in part and denies in part Ms. Cole's motion.

**DISCUSSION**

Under the EAJA, a court shall award to a prevailing party, other than the United States, fees and expenses[1] incurred in any civil action brought by or against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A party seeking such an award must comply with the following requirements: (1) the party must file an application for fees and expenses demonstrating the party is the prevailing party and is eligible to receive an award; (2) the party must submit the application within 30 days of final judgment in the case;[2] (3) the party must indicate the amount sought and provide an itemized statement in support; and (4) the party must allege the position of the United States was not substantially justified. 28 U.S.C. § 2412(d)(1)(B). "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which

---

[1]Fees and expenses include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees . . . ." 28 U.S.C. § 2412(d)(2)(A).

[2]"The 30–day EAJA clock begins to run after the time to appeal that 'final judgment' has expired." U.S. E.E.O.C. v. Mid-Minnesota Fed. Credit Union, 820 F. Supp. 432, 434 (D. Minn. 1993) (quoting Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991)). Under the Federal Rules of Appellate Procedure, a "notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is . . . a United States officer or employee sued in an official capacity." Fed. R. App. P. 4(a)(1)(B).

the civil action is based) which is made in the civil action for which fees and other expenses are sought." Id.

The court finds Ms. Cole fully complied with the requirements of the EAJA. Ms. Cole is the prevailing party under the court's reversal and remand order and subsequent judgment. (Dockets 33 & 34); see Larson v. Astrue, Civil No. 06-1734 PJS/FLN, 2008 WL 2705494, at *2 (D. Minn. July 9, 2008) (citing Shalala v. Schaefer, 509 U.S. 292, 301-02 (1993)) ("The Supreme Court has held that a judgment granting remand is a final judgment for which fees may be granted."). Ms. Cole filed her motion for fees and expenses well within the EAJA's 30-day window following the close of the appeal period. (Docket 35). Her attorney, Ms. Ratliff, set forth the amount requested and properly provided an itemized log detailing the actual time expended in this case. (Dockets 35 & 37-2).

The heart of the parties' dispute centers around the fourth requirement of the EAJA—whether the position of the United States was substantially justified. The court notes the government at all times bears the burden of proving its position was substantially justified. Goad v. Barnhart, 398 F.3d 1021, 1025 (8th Cir. 2005). A social security claimant may be the prevailing party for purposes of the EAJA, yet still not be entitled to an award of fees if the government's position was substantially justified. "A position enjoys substantial justification if it has a clearly reasonable basis in law and fact." Id. A loss on the merits by the government does not create a presumption that it

lacked substantial justification for its position.  Id.  This distinction is explained as follows:

> The district court correctly recognized that "fees are not . . . awarded just because the Secretary [loses a] case."  The Secretary's position in denying benefits can be substantially justified even if the denial is unsupported by substantial evidence on the record as a whole.  This is so because the substantial evidence and substantial justification standards are different.  Under the substantial evidence standard, the district court must consider evidence that both supports and detracts from the Secretary's position.  In contrast, under the substantial justification standard the district court only considers whether there is a reasonable basis in law and fact for the position taken by the Secretary.  Because the standards are "neither semantic nor legal equivalents," the Secretary can lose on the merits of the disability question and win on the application for attorney's fees.

Welter v. Sullivan, 941 F.2d 674, 676 (8th Cir. 1991) (internal citations omitted).

The court finds the government cannot meet its burden in showing substantial justification for its position.   The government's position was not well founded in fact or law, as explained in the court's reversal and remand order.  Lauer v. Barnhart, 321 F.3d 762, 764 (8th Cir. 2003) ("The standard is whether the Secretary's position is 'clearly reasonable, well founded in law *and fact*, solid though not necessarily correct.' ") (citation omitted).

The government asserts the "ALJ waded into [a] complicated record" in Ms. Cole's case and that Ms. Cole's "case involve[d] primarily factual questions touching on complicated neurosurgery issues," which the government was substantially justified in defending under existing precedent for the United States Court of Appeals for the Eighth Circuit.  (Docket 38 at p. 3).  The government further asserts this is particularly true where the court remanded Ms. Cole's case based on the ALJ's assessment of witness' testimony and

4

credibility. Id. at 3-4. The government's assertions represent a skewed reading of the court's decision reversing the decision of the Commissioner. (Docket 33).

Integral to the court's decision to reverse the decision of the Commissioner was the ALJ's decision to "rely[] on the opinions of Dr. Janese, Dr. Buchkoski and Dr. Soule, [while] fail[ing] to provide 'good reasons' for discounting the opinions of Ms. Cole's treating physicians." Id. at 29.

The ALJ relied on the opinions of Dr. Janese, a non-examining physician, who opined that Ms. Cole fully recovered from any brain condition related to her hydrocephalus following a successful brain shunt surgery. However, Dr. Janese mistakenly believed Ms. Cole's shunt surgery occurred in 1982 when the surgery actually occurred in 1998.[3] Id. at 13-14. This mistake alone demonstrates Dr. Janese's lack of familiarity with Ms. Cole's medical records. Id. at 14. Nonetheless, the ALJ continued to accept Dr. Janese's opinion that Ms. Cole's hydrocephalus was corrected by the shunt surgery despite two of Ms. Cole's treating physicians, Dr. Lassegard and Dr. Finley, concluding to the contrary. Id. at 14-15.

Dr. Lassegard determined Ms. Cole continued to suffer from delusional thoughts two years after her abscess surgery. Id. at 15. Dr. Finley concluded that Ms. Cole exhibited symptoms of slit ventricle syndrome after reviewing a CT scan of her brain. Id. For his part, Dr. Janese attributed Ms. Cole's delusional thoughts to "general anesthesia and opiates," and opined that the "slit-like

---

[3]The court notes the ALJ adopted Dr. Janese's opinion regarding the date of Ms. Cole's shunt surgery despite being aware that this date was incorrect. Id. at 13.

5

ventricles" meant the brain shunt was working.  Id. at 14.  The ALJ did not give good reasons for discounting the opinions of Ms. Cole's treating physicians in favor of accepting those of Dr. Janese.

The ALJ also relied on the opinions of Dr. Buchkoski and Dr. Soule, state agency psychiatric consultants who had not reviewed Ms. Cole's entire medical record.  Id. at 15-16.  Dr. Buchkoski only reviewed Ms. Cole's pre-August 2007 medical and testing evidence.  Dr. Soule only reviewed Ms. Cole's pre-February 2008 medical evidence.  Id.  Ms. Cole received medical treatment through 2012.  Id. at 16.  Again, the ALJ relied on the opinions of consulting psychiatrists who had not reviewed the entire medical record over those of Ms. Cole's treating physicians.  The ALJ did not give good reasons for doing so.

The ALJ did not weigh the opinion of consulting psychologist Dr. Greg Swenson who diagnosed Ms. Cole with type I bipolar disorder and an amnestic disorder possibly due to a brain lesion.  Id. at 16-17.  Dr. Swenson described Ms. Cole has having difficulty sustaining her attention for any length of time.  Id. at 17.  The ALJ also did not address the opinions and test results of vocational expert Ms. Linda Lockner regarding Ms. Cole's severe finger dexterity limitations.  Id.

The ALJ improperly discounted the opinions of Ms. Cole's treating physicians, particularly when they were in conflict with those of the state agency consultants and non-examining physicians.  And, where the opinions of consulting doctors and healthcare professionals Dr. Swenson and Ms. Lockner corroborated the opinions of Ms. Cole's treating physicians, the ALJ failed to properly consider or even discuss those opinions.  The ALJ similarly discounted

third-party statements regarding Ms. Cole's ability to work that largely mirrored the opinions of her treating physicians and Dr. Swenson.  Id. at 23-26 (At least seven of the witnesses noted Ms. Cole's problems with her memory, concentration, focus and ability to follow instructions.).

    Despite the government's assertions, this is *not* a case where "resolution . . . hinges to [a significant] extent on determinations of witness credibility, [such that] it is an abuse of discretion to find that the government's position was not substantially justified."  United States v. Hurt, 676 F.3d 649, 653 (8th Cir. 2012) (citing Wilfong v. United States, 991 F.2d 359, 368 (7th Cir. 1993) (internal quotation marks omitted).  Although Ms. Cole's case did involve a lengthy record with complex factual issues, this was not a primary basis of the court's reversal of the Commissioner's decision.  The ALJ simply cannot discount the opinions of multiple treating physicians in favor of non-examining physicians and consultants without first engaging in a substantive analysis explaining and giving good reasons why those opinions should be discounted.  This is especially true where evidence in the record, the opinions of a consulting psychiatrist and healthcare professional, and multiple third-party statements corroborate the opinions of the treating physicians.[4]

---

[4]The court reiterates its finding that the ALJ's assessment of Ms. Cole's credibility and his decision to discredit her subjective complaints was not supported by substantial evidence.  (Docket 33 at pp. 18-23).  However, because the court already found that the government's position in Ms. Cole's case was not substantially justified, the court need not consider the government's position in this regard.

For these reasons, the government's position in Ms. Cole's case was not substantially justified and is distinguishable from the "factual-inquiry" line of cases cited by the government. The issue in this case was the process, or lack thereof, the ALJ employed in reaching the decision to deny Ms. Cole social security benefits. Hurt, 676 F.3d at 653 ("Credibility is the quintessential factual question."); Bale v. Chevrolet Co. v. United States, 620 F.3d 868, 873 (8th Cir. 2010) (noting that "where a case involves primarily factual questions, this court has found that the government's position was substantially justified."); Kaffenberger v. United States, 314 F.3d 944, 960 (8th Cir. 2003) (discussing the fact intensive nature of the informal claim doctrine).

Because the government's position was not substantially justified, an award of fees and expenses under the EAJA is proper. The court next considers whether the total amount requested by Ms. Cole is appropriate.

Ms. Cole requests an award of attorney's fees at the rate of $177.50 per hour. (Docket 37-1 at p. 3). The EAJA sets a limit of $125 per hour for attorney's fees. 28 U.S.C. § 2412(d)(2)(A). However, a court may award a higher hourly fee if "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Id. The court finds the rate of $177.50 per hour reasonable in light of the necessary adjustment for inflation and the training and experience of Ms. Ratliff in the practice of social security law. The Commissioner did not request a reduction in the hourly rate of $177.50 for Ms. Ratliff's fees. However, the Commissioner does object to the total number of

hours billed by Ms. Ratliff.  Id. at pp. 10-12.  Ms. Ratliff expended 231.56 hours on Ms. Cole's case, but she voluntarily reduced her EAJA attorney's fees request to 155.15 hours.[5]  (Docket 37-2).  The Commissioner, without proposing a recommended number of hours, seeks to reduce the number of Ms. Ratliff's billable hours even further.  (Docket 38 at pp. 4-5).

A court has the discretion to reduce the amount of the award or deny an award "to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy."  28 U.S.C. § 2412(d)(1)(C).  The court must also decide whether the hours spent by Ms. Ratliff representing Ms. Cole were "reasonably expended."  See Blum v. Stenson, 465 U.S. 886, 901 (1984); 28 U.S.C. § 2412(d)(2)(A).  The court acknowledges the administrative record in Ms. Cole's case was extensive.  However, after reviewing Ms. Ratliff's time and expense log (Docket 37-2) and considering the parties' arguments on this issue, the court finds certain reductions are proper.

Due to the manner in which Ms. Ratliff itemized and recorded her time in her "Log of Attorney Time Expenses" (Docket 37-2), the court finds it most helpful

---

[5]Ms. Ratliff's request of attorney's fees for 155.15 hours of work is purportedly based on a 33.33-percent reduction of her total hours worked (231.56).  (Docket 37-2 at p. 27).  However, a 33.33-percent reduction of 231.56 hours is 154.37 hours.  Because Ms. Cole's attorney declaration clearly requests attorney's fees for 155.15 hours, the court overlooks the mathematical discrepancy and interprets Ms. Cole's motion as requesting attorney's fees for 155.15 hours of work.  See Docket 37-1 at p. 3.

to chronologically organize her hours into categories based on the dates on which certain documents were filed in the court's online docket.[6]

On or before April 19, 2011, Ms. Cole filed her complaint in district court, prepared a motion and affidavit to proceed *in forma pauperis*, which the court granted, and issued multiple summonses. (Dockets 1, 2, 3, 4, 5, 6). Ms. Ratliff expended approximately 4.1 hours performing these tasks. (Docket 37-2 at p. 1). The court finds Ms. Ratliff reasonably expended this 4.1 hours.

On August 5, 2011, the court granted the government's motion for a sentence six remand pursuant to 42 U.S.C. § 405(g). (Docket 16). Leading up to the court's remand order, Ms. Ratliff incurred approximately 17.74 hours working on Ms. Cole's case (Docket 37-2 at pp. 1-3), which included only one court filing—an affidavit of service. (Docket 8). The court finds 17.74 hours was excessive at that stage of the litigation. The court finds 5.5 hours spent developing Ms. Cole's case to be a more appropriate amount of time given the early procedural posture of the case.

On May 3, 2012, a second administrative hearing was held. (Docket 33 at p. 2). Ms. Ratliff expended approximately 88.31 hours preparing for, traveling to, and attending this hearing. (Docket 37-2 at pp. 3-9). The court finds 88.31 hours is excessive for a one-hour administrative hearing. The court finds 55 hours spent preparing for, traveling to, and attending the hearing to be a more

---

[6]The court's chronological method of organizing Ms. Ratliff's billable hours was necessitated by the fact that Ms. Ratliff's individual time entries tended to obfuscate the actual amount of time Ms. Ratliff spent performing work that is recoverable under 28 U.S.C. § 2412. See, e.g., Docket 37-2 at pp. 2, 3, 7, 11, 14.

10

appropriate amount of time given the complex factual issues surrounding Ms. Cole's hydrocephalus brain condition and her ability to work.

On July 12, 2012, the ALJ issued an unfavorable decision regarding Ms. Cole's ability to obtain Social Security benefits. (Docket 33 at p. 2). Prior to the unfavorable decision, Ms. Ratliff prepared a post-hearing brief and exhibits. (Docket 37-2 at p. 10). Ms. Ratliff expended approximately 9.55 hours in this regard. Id. at 9-11. The court finds 9.55 hours is excessive. The court finds 7.58 hours to be a more appropriate amount of time to complete the post-hearing briefing.

On March 19, 2013, Ms. Ratliff, on behalf of Ms. Cole, filed a joint statement of material facts ("JSMF") and a brief in support of her second motion to reverse the decision of the Commissioner. See Dockets 17, 28, 29. Ms. Ratliff expended approximately 98.84 hours preparing the JSMF and briefing her second motion to reverse the decision of the Commissioner. (Docket 37-2 at pp. 11-19). The court finds that 98.84 hours preparing a JSMF and supporting brief is excessive. The court finds 54.25 hours to be a more appropriate amount given the time already expended preparing for the administrative hearing and the relative simplicity of the legal issues raised in Ms. Cole's appeal.

On May 2, 2013, Ms. Ratliff filed a brief in response to the government's motion to affirm the decision of the Commissioner. (Docket 32). Ms. Ratliff expended approximately 6.41 hours preparing Ms. Cole's reply brief. (Docket 37-2 at pp. 19-21). The court finds that 6.41 hours preparing this reply brief is excessive. The court finds 4.25 hours to be a more appropriate amount of time

11

given the time Ms. Ratliff already expended preparing for the administrative hearing and the briefing she had already completed.

On April 29, 2014, following this court's March 21, 2014, order granting Ms. Cole's motion to reverse the decision of the Commissioner, Ms. Ratliff filed a motion for attorney's fees under the EAJA. (Docket 35). Ms. Ratliff expended approximately 6.61 hours working on Ms. Cole's case following the filing of her reply brief through the filing of her motion for attorney's fees. (Docket 37-2 at pp. 21-27). Ms. Ratliff expended 2.5 hours preparing her motion for attorney's fees and supporting documents. Id. at 27. The court finds only the 2.5 hours spent preparing the EAJA motion are an appropriate expenditure of time at that juncture in Ms. Cole's case.

After reviewing Ms. Ratliff's "Log of Attorney Time Expenses," the court finds these reductions are appropriate. The court finds a total of 133.2[7] hours billed by Ms. Ratliff is reasonable and in line with the complexity of this case, for a total attorney's fee award of $23,643.00. The Commissioner did not object to an "expense" award of 6-percent state and local sales tax on the attorney's fees, which in this case amounts to $1,418.58. The Commissioner also did not object to Ms. Cole's reimbursement request of $528.01 for expenses incurred in connection with litigating this matter. These expenses included: $35.51 for the cost of medical records; $17.50 for an online expert opinion; $175 for a treating

---

[7]The court rounds Ms. Ratliff's hours from 133.18 to 133.2 hours. The court notes that its reductions to Ms. Ratliff's billable hours exceed the total amount of hours contained in the time entries the government objected to in its brief in response to Ms. Cole's EAJA motion for attorney's fees. See Docket 38 at pp. 4-5.

12

specialist opinion; and $300 for vocational aptitude and ability testing.  (Docket 37-1 at p. 3).

Based on the analysis above, it is hereby

ORDERED that plaintiff's motion (Docket 35) is granted in part and denied in part.   Plaintiff is awarded $25,589.59 comprised of $23,643.00 in attorney's fees, $1,418.58 in expenses representing 6-percent state and local sales tax on the attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and litigation expenses of $528.01.[8]

IT IS FURTHER ORDERED that this award is without prejudice to plaintiff's right to seek attorney's fees under section 206(b) of the Social Security Act, 42 U.S.C. § 406(b), subject to the offset provision of the Equal Access to Justice Act; however, this award shall constitute a complete release from and bar to any and all other claims plaintiff may have relating to the Equal Access to Justice Act in connection with this case.

IT IS FURTHER ORDERED that under Astrue v. Ratliff, 560 U.S. 586, 595-98 (2010), Equal Access to Justice Act fees awarded by the court belong to the plaintiff and are subject to offset under the Treasury Offset Program, 31 U.S.C. § 3716(c)(3)(B) (2006).

---

[8]On April 18, 2011, the court authorized Ms. Cole to proceed on an *in forma pauperis* basis.  (Docket 5).  The court reminds Ms. Cole of her obligation to repay the costs and fees, including the $350 filing fee, which were not originally charged due to the court finding her indigent and unable to pay at the time her suit was filed.  Id.

13

IT IS FURTHER ORDERED that the Equal Access to Justice Act fees shall be paid to plaintiff Beverly J. Cole but delivered to plaintiff's attorney Catherine G. Ratliff, 13060 Eagle Court, Hot Springs, South Dakota 57747-7352.

Dated February 19, 2015.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                CHIEF JUDGE